Defendant, Scott Horrigan, appeals from his conviction and sentence on one count of gross sexual imposition.
During the summer of 1997, Defendant, an eighteen year old high school senior, worked as a state licensed nursing assistant at Friendship Village nursing home in Trotwood. Gladys Shute was an elderly resident at Friendship Village.
Ms. Shute suffers from Alzheimer's disease. As a result, she is unable to effectively and appropriately communicate with others on occasion. Ms. Shute also suffers from physical ailments that require her to wear an adult diaper. As a nursing assistant at Friendship Village, Defendant's job was to provide the residents with routine daily nursing care and keep them comfortable. This included changing the diaper worn by the female residents and providing them with daily perineal care.
On the evening of August 28, 1997, nursing assistant Janet Fairman and the supervising nurse on duty, Sylvia Zulauf, were walking the halls at Friendship Village looking for Defendant. They wished to discuss a change in patient assignments for that evening with him. While in the hallway Janet Fairman heard Gladys Shute shouting, "No, no," from her room. Fairman stepped into Ms. Shute's room and saw that Ms. Shute was lying on her bed with her diaper open and her legs spread apart. Defendant had the handle of a hair brush down in Ms. Shute's vaginal area. Fairman claims she could see the handle moving in and out of Ms. Shute's vagina. When Defendant saw Fairman, he jerked the handle out, turned the hairbrush over, and began brushing Ms. Shute's pubic area. Defendant said to Fairman: "I know what this looks like."
By this time Sylvia Zulauf, the supervising nurse, had stepped into the room. Defendant continued brushing Ms. Shute's pubic area. When Zulauf asked Defendant what he was doing, Defendant replied: "I don't know what to do with her. She says she is itching and she wants me to do this."
Zulauf told Defendant that his behavior was inappropriate, and she took the hairbrush from Defendant and threw it in a trash can. Zulauf told Defendant to put a fresh diaper back on Ms. Shute. Zulauf then stepped out into the hall, where Janet Fairman informed Zulauf that Defendant had the handle of that hairbrush inside Ms. Shute's vagina.
Sylvia Zulauf immediately called Ms. Shute's personal physician, Dr. Sugumaran, who directed Zulauf to have Ms. Shute transported to the emergency room at Good Samaritan Hospital. Police were also summoned to the scene at Friendship Village.
Trotwood police officer Ronald Settich arrived and spoke briefly with Sylvia Zulauf before Zulauf accompanied Ms. Shute to the hospital. Officer Settich then spoke with Janet Fairman, after which he spoke with Defendant. Defendant told Officer Settich that Ms. Shute had complained of an itch in her pubic area so Defendant brushed her pubic hair. According to Officer Settich, Defendant also admitted inserting the handle of the hairbrush into Ms. Shute's vagina. Officer Settich placed Defendant under arrest for rape and sexual battery.
At the hospital a sexual assault examination was performed on Gladys Shute. According to Dr. Zych, his physical findings were consistent with a possible sexual assault by a foreign object or instrument. Dr. Zych's diagnosis was "possible sexual assault by history."
Defendant was subsequently indicted on one count of Rape in violation of R.C. 2907.02(A)(1)(c). At his jury trial, Defendant testified that when he began changing Ms. Shute's diaper, she spoke the word "itch." Ms. Shute had her hand down on her Attends in her pubic area, and was moving her hand back and forth as if to scratch. Defendant thought she must be itching. When Defendant opened up Ms. Shute's Attends, she continued moving her hand back and forth in this area as if to scratch. Defendant picked up a hairbrush off the nightstand and began brushing Ms. Shute's pubic area, as a way of helping her. Ms. Shute then stopped moving her hand back and forth, so Defendant believed he had helped her. Although Defendant denied inserting the handle of the hairbrush into Ms. Shute's vagina, Defendant testified that he took the handle and moved it back and forth, scratching in the crease area where Ms. Shute's legs join. It was during this time that Janet Fairman walked into the room and saw Defendant holding the handle of the brush in Ms. Shute's vaginal area.
Dr. Frazier, an OB/GYN, testified at trial that Dr. Zych's physical findings upon examining Ms. Shute do not substantiate that the handle of the hairbrush was inserted into Shute's vagina. The State presented evidence at trial that Gladys Shute had no history of complaints regarding vaginal itching, and that it would be inappropriate for a nursing assistant to scratch any portion of an elderly patient's body because of the danger of breaking their thin skin. Nursing assistants were expected to report complaints by the residents of discomfort or itching to a nurse.
The jury found Defendant not guilty on the rape charge but guilty of the lesser included offense of gross sexual imposition, in violation of R.C. 2907.05 (A) (5). The trial court sentenced Defendant to five years of community control sanctions, which included twenty-six consecutive weekends in the county jail, and classified Defendant as a sexually oriented offender.
Defendant has timely appealed to this court, presenting one issue for our review. Defendant argues that the evidence presented was insufficient to convict him of gross sexual imposition because that evidence fails to prove that he touched Ms. Shute's pubic area for the purpose of sexually arousing or gratifying either himself or Ms. Shute.
FIRST ASSIGNMENT OF ERROR
 THERE WAS INSUFFICIENT EVIDENCE FOR THE JURY TO FIND APPELLANT GUILTY OF "GROSS SEXUAL IMPOSITION" WHEN THERE WAS NOT EVIDENCE BEYOND A REASONABLE DOUBT THAT APPELLANT ACTED FOR SEXUAL GRATIFICATION OR AROUSAL.
Sufficiency of the evidence and weight of the evidence are distinct concepts to which different legal tests apply.State v. Thompkins (1997), 78 Ohio St.3d 380. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to that inquiry is set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Defendant was found guilty of gross sexual imposition in violation of R.C. 2907.05(A)(5), which states:
 No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the others persons is substantially impaired because of a mental or physical condition or because of advanced age.
Sexual contact is defined in R.C. 2907.01(B):
 "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
To convict Defendant of gross sexual imposition, the State was required to prove beyond a reasonable doubt that Defendant's purpose or specific intention in touching the victim on the proscribed areas of the body set out in R.C.2907.01(B) was the sexual arousal or gratification of either himself or the victim. State v. Mundy (1994), 99 Ohio App.3d 275. Defendant argues that the State presented no evidence whatsoever that he had any such improper purpose, and thus the evidence is insufficient as a matter of law to sustain his conviction for gross sexual imposition.
In State v. Mundy, supra, this court stated:
 Proof of an accused's purpose or specific intent invariably requires circumstantial evidence, absent an admission. In Grigson, supra, the court observed:
 "Appellant essentially contends that there was no direct evidence of the mens rea element concerning arousal so as to distinguish between a sexual act and a mere physical assault. The determination of a defendant's mental state, absent some comment on his or her part, must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances. State v. Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. This is, in fact, the well-recognized process of inferential reasoning. This process by necessity incorporates an objective mechanism or standard in determining the defendant's state of mind by the use of circumstantial evidence. The trier of fact reviews the defendant's conduct in light of the surrounding facts and circumstances and infers a purpose or motive. This conclusion by the trier of fact reflects the purpose that an ordinary prudent person would ascribe to a defendant's conduct."
 With respect to prosecutions such as this one under R.C. 2907.05(A)(4):
 "[T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and *289 that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." State v. Cobb
(1991), 81 Ohio App.3d 179, 185, 610 N.E.2d 1009, 1013.
 Simply put, R.C. 2907.05(A)(4) forbids touching a person under age thirteen or causing a person under age thirteen to touch the offender on certain parts of the body, including the genitals, buttocks, or in the case of a female the breasts, for the specific purpose of sexually arousing or gratifying either person. Whether that touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact. In other words, would an ordinary prudent person or a reasonable person sitting as a juror perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire.
Id. at 288-289.
The question presented in this case is admittedly a close one. Nevertheless, construing the evidence presented at trial in a light most favorable to the State, as we are required to do, we conclude that an ordinary, prudent person sitting as a juror, upon evaluating Defendant's actions and all of the surrounding facts and circumstances, could reasonably choose to reject Defendant's proffered explanation for his conduct and infer that Defendant engaged in touching Ms. Shute's pubic area for the purpose of sexually arousing or gratifying either himself or Ms. Shute. Reasonable minds could find each and every essential element of gross sexual imposition proved beyond a reasonable doubt. Accordingly, sufficient evidence was presented to sustain Defendant's conviction.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Cheryl A. Ross, Esq. Michael K. Murry, Esq. Hon. James J. Gilvary